**IN THE UNITED STATES DISTRICT COURT FOR
THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| HOPE LEWIS, Individually and on behalf Of the Estate of CYRUS LEWIS, Deceased, | : : : | NO. 4:14-cv-2126-KM |
| | : | CIVIL ACTION – LAW |
| Plaintiff | : : | MAG. JUDGE KAROLINE MEHALCHICK |
| v. | : : | |
| | : | *Electronically Filed* |
| COUNTY OF NORTHUMBERLAND, et al. | : : | |
| Defendants | : | JURY TRIAL DEMANDED |

**BRIEF OF PRIMECARE MEDICAL DEFENDANTS IN SUPPORT
OF THEIR MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT**

## I. HISTORY OF THE CASE

This matter allegedly arises from the suicide death of Cyrus Lewis while he was incarcerated in the Northumberland County Prison. PrimeCare Medical, Inc. (hereinafter "PrimeCare") had a contract with Northumberland County to provide medical services to inmates incarcerated in the Northumberland County Prison. Plaintiff claims that "Dr. Thomas Weber, Psy.D." is employed by PrimeCare as the "chief psychologist for PrimeCare. At this stage of the proceeding, the PrimeCare Medical Defendants are constrained to accept this allegation as true notwithstanding the inaccurate nature of the allegation. Mikelanne Welliver was employed by PrimeCare as a licensed mental health clinician at the Northumberland County Prison. Plaintiff claims that Caitlin Henrie was a

licensed practical nurse who performs the intake suicide screening of inmates upon their entry into the Northumberland County Prison.

Plaintiff commenced this action with the filing of a Complaint on November 5, 2014. (Doc. 1).   On June 15, 2016, Plaintiff filed an Amended Complaint (Doc. 25).   The Amended Complaint adds PrimeCare, Thomas Weber, Mikelanne Welliver and Caitlin Henrie as parties to the case.   Count I of the Amended Complaint is for an alleged violation of Mr. Lewis' Fourteenth Amendment rights, and names the County of Northumberland, Roy Johnson, Brian Wheary, Jason Greek, Jennifer Lashomb, and Northumberland County Board of Prison Inspectors.   Count II is premised upon wrongful death and incorporates by reference the prior individual parties.   Count III is premised upon a survival action and again incorporates the individual parties from Count I.   Count IV is premised upon an alleged violation of Mr. Lewis' Fourteenth Amendment rights and is asserted against PrimeCare, Thomas Weber, Mikelanne Welliver, and Caitlin Henrie. It does not appear as if Plaintiff is asserting a negligence cause of action against any of the PrimeCare Medical Defendants, and this is consistent with Plaintiff's failure to file a Certificate of Merit.   This Brief is filed in support of the PrimeCare Medical Defendants' Motion to Dismiss.

Plaintiff claims that Cyrus Lewis began an incarceration in the Northumberland County Prison on June 10, 2014.  (Doc. 25, ¶12).  Plaintiff alleges that the PrimeCare Medical Defendants failed to give Mr. Lewis a full mental health and suicide risk evaluation by a qualified psychiatrist.  (Doc. 25, ¶ 67).  Plaintiff claims the PrimeCare Medical Defendants failed to properly classify Mr. Lewis' level of suicide risk.  (Doc. 25, ¶ 68).

Implicit in Plaintiff's allegations is that Mr. Lewis was placed upon some level of suicide risk. Plaintiff claims the PrimeCare Medical Defendants failed to place Mr. Lewis on an "adequate level of watch." (Doc. 25, ¶69). Implicit in this allegation is that Mr. Lewis was placed upon some level of suicide watch.

Despite more than almost eighteen (18) months since Plaintiff filed this action against the Municipal Defendants, Plaintiff is only able to make conclusory allegations of failing to adequately and regularly monitor Mr. Lewis, as well as an alleged failure to train and supervise PrimeCare staff in identifying, monitoring, and treating suicidal inmates. (Doc. 25, ¶¶ 70-71). In support of these boilerplate and factually deficient allegations, Plaintiff claims that "Defendants' deliberate indifference to the right (sic) of inmates led to the suicide death of inmate Andrew Beers in August 2013." (Doc. 25 ¶ 73). It is submitted that this Court can take judicial notice of the pleadings and ultimate dismissal of the case Sherry Beers v. PrimeCare Medical, et al, 1:14-cv-02349, where PrimeCare was not sued for deliberate indifference as a result of Andrew Beers' death. Thus, the Plaintiff's allegation of deliberate indifference to Andrew Beers is belied by the pleadings and ultimate dismissal of that case from this Court.

## II.  ISSUE

SHOULD THIS HONORABLE COURT GRANT THE PRIMECARE MEDICAL DEFENDANTS' MOTION TO DISMISS WHERE PLAINTIFF CANNOT DEMONSTRATE A VIOLATION OF CYRUS LEWIS' FOURTEENTH AMENDMENT RIGHTS?

Suggested Answer: Yes

### III.  ARGUMENT

The present Motion to Dismiss is filed pursuant to Fed. R. Civ. P. 12(b)(6).  Under the notice pleading requirements of Fed. R. Civ. P. 8(a)(2), a complaint must contain only "a short and plain statement of the claim showing that the pleader is entitled to relief." However, to survive a motion to dismiss for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6), the complaint must plead sufficient factual allegations, which, taken as a whole, state a facially plausible claim to relief.  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007).  A complaint satisfies the threshold of facial plausibility if "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Ashcroft v. Iqbal, 556 U.S. 662, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009) (citing Twombly, 550 U.S. at 556).

"Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements," are insufficient to establish plausible allegations to survive the motion.  Id. at 1949 (citing Twombly, 550 U.S. at 555).  In analyzing the complaint, the court must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief."  Fowler v. UPMC Shadyside, 578 F.3d 203, 210 (3d Cir. 2009) (quoting Phillips v. Cnty. of Allegheny, 515 F.3d 224, 233 (3d Cir. 2008)).  However, the court may disregard any legal conclusions in the complaint.  Id. at 210-11 (citing Iqbal, at 1949).

Therefore, after Iqbal, when presented with a motion to dismiss for failure to state a claim, district courts should conduct a two-part analysis.  Fowler v. UPMC Shadyside, 578 F.3d 203, 210-211 (3d Cir. Pa. 2009).  First, the factual and legal elements of a claim should be separated.  Id.  The District Court must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions.  Id. Second, a District Court must then determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a "plausible claim for relief."  Iqbal, 129 S. Ct. at 1950.  In other words, a complaint must do more than allege the plaintiff's entitlement to relief.  A complaint has to "show" such an entitlement with its facts.  Id.  As the Supreme Court instructed in Iqbal, "[w]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged -- but it has not 'show[n]' -- 'that the pleader is entitled to relief'."  Iqbal, 129 S. Ct. at 1950.  This "plausibility" determination will be "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense."  Id.

## A.   Plaintiff cannot demonstrate a constitutional violation.

The Third Circuit has recognized that the suicide of a pretrial detainee can support a recovery in a 42 U.S.C. § 1983 (2012) action.  Colburn v. Upper Darby Twp., 946 F.2d 1017, 1023-25 (3d Cir. 1991).  See, also, Williams v. Borough of West Chester, 891 F.2d 458 (3d Cir. 1989); Freedman v. City of Allentown, 853 F.2d 1111 (3d Cir. 1988).  The standard of liability to be applied in this circuit in prison suicide cases is that "if [custodial] officials know or should know of the particular vulnerability to suicide of an inmate, then the Fourteenth Amendment imposes on them an obligation not to act with reckless

indifference to that vulnerability." Colburn, 946 F.2d 1017, 1023 (internal citations omitted).

A plaintiff in a prison suicide case has the burden of establishing three elements: (1) the detainee had a "particular vulnerability to suicide," (2) the custodial officer or officers knew or should have known of that vulnerability, and (3) those officers "acted with reckless indifference" to the detainee's particular vulnerability. Id.

Reckless or deliberate indifference is articulated in Estelle v. Gamble, 429 U.S. 97, 50 L. Ed. 2d 251, 97 S. Ct. 285 (1976). Estelle involved Eighth Amendment claims alleging inadequate medical treatment. The Court held that prison officials violate the Eighth Amendment's proscription of cruel and unusual punishment when they exhibit "deliberate indifference to serious medical needs of prisoners." Id. at 104. The standard enunciated in Estelle "requires [both that there be] deliberate indifference on the part of the prison officials and [that] the prisoner's medical needs . . . be serious." Monmouth Cnty. Corr. Institutional Inmates v. Lanzaro, 834 F.2d 326, 346 (3d Cir. 1987).

A serious medical need, as developed in Estelle, has two components. The detainee's condition must be such that a failure to treat can be expected to lead to substantial and unnecessary suffering, injury, or death. Moreover, the condition must be "one that has been diagnosed by a physician as requiring treatment or one that is so obvious that a lay person would easily recognize the necessity for a doctor's attention." Monmouth, 834 F.2d at 347 (internal citations omitted).

In Colburn v. Upper Darby Twp., 838 F.2d 663, 664 (3d Cir. 1988), the Third Circuit recognized that "particular vulnerability to suicide" represents a "serious medical need."

However, the Third Circuit has recognized that neither the due process clause nor the Eighth Amendment imposes liability for a negligent failure to protect a detainee from self-inflicted injury.  <u>Id.</u>  A higher level of culpability, one involving "reckless or deliberate indifference," is required.  <u>See</u>, <u>Colburn</u>, 946 F.2d at 1023-25.  Therefore, it is clear that a level of culpability higher than a negligent failure to protect from self-inflicted harm is required.  <u>Id.</u>, at 1024.

The requirement of a "particular vulnerability to suicide" speaks to the degree of risk inherent in the detainee's condition.  <u>Id.</u>  The requirement of "reckless or deliberate indifference" implies that there must be "a strong likelihood, rather than a mere possibility, that self-inflicted harm will occur."  <u>Id.</u> (internal citations omitted).  Even where a strong likelihood of suicide exists, it must be shown that the custodial officials "knew or should have known" of that strong likelihood.  <u>Id.</u>  There can be no reckless or deliberate indifference to that risk unless there is something more culpable on the part of the officials than a negligent failure to recognize the high risk of suicide.  <u>Id.</u>

The burden of proving liability in a prison suicide case "is a difficult one to meet," <u>Wargo v. Schuylkill County</u>, 2008 WL 4922471, at *5 (M.D. Pa. 2008), because, "a prison custodian is not the guarantor of a prisoner's safety. We cannot infer from the prisoner's act of suicide itself that the prison officials have recklessly disregarded their obligation to take reasonable precautions to protect the safety of prisoners entrusted to their care" <u>Freedman</u>, 853 F.2d at 1115.

In the present matter, Plaintiff makes conclusory allegations and lump all of the Defendants together with no delineation as to what role each Defendant had or could have had with providing care to Mr. Lewis.  There are no direct allegations of personal involvement for any of the PrimeCare Medical Defendants.  Moreover, the allegations in the Complaint clearly imply (and Plaintiff should know by reviewing the medical records) that Mr. Lewis was placed upon a suicide watch and was ultimately stepped down from the suicide precautions.  Thus, there clearly was not a reckless indifference shown to Mr. Lewis.

Plaintiff also seems to assert a <u>Monell</u> claim against PrimeCare.  Municipalities and private corporations that contract with the state to provide services cannot be subjected to liability under § 1983 on the basis of *respondeat superior.* <u>See</u>, <u>Natale v. Camden Cty. Corr. Facility</u>, 318 F.3d 575, 583-84 (3d Cir. 2003); <u>see</u>, <u>also</u>, <u>Monell</u>, 436 U.S. at 691-94 (holding that a municipality cannot be liable under § 1983 on a theory of respondeat superior).  Instead, in order to hold a private corporation liable under § 1983, a plaintiff must prove that he suffered a constitutional deprivation as a result of an official corporate policy or custom.  <u>Natale</u>, 318 F.3d at 583-84; <u>see</u>, <u>also</u>, <u>Bd. of the Cty. Comm'rs v. Brown</u>, 520 U.S. 397, 404 (1997); <u>Griggs v. Dauphin County Prison</u>, No. 1:06-0823; 2008 WL 2518090 at *4 (M.D. Pa. June 19, 2008); <u>Miller v. City of Phila.</u>, Civil Action No. 96-3578, 1996 U.S. Dist. LEXIS 17514, 1996 WL 683827 at *4, *10-11 (E.D. Pa. Nov. 21, 1996) (in order to establish liability for a private corporation, a plaintiff must show that the corporation, "with 'deliberate indifference to the consequences,

established and maintained a policy, practice or custom which directly caused [plaintiff's] constitutional harm.'") (*quoting* Stoneking v. Bradford Area Sch. Dist., 882 F.2d 720, 725 (3d Cir. 1989)).

A local government entity may be held liable under § 1983 only when the plaintiff demonstrates that the government entity itself caused the plaintiff's injury through the implementation of a policy or custom.  Monell, 436 U.S. at 694.  A policy is an official proclamation or edict of a municipality while a custom is a practice that is so permanent and well settled as to virtually constitute law.  Beck v. City of Pitt., 89 F.3d 966, 971 (3d Cir. 1996) (citations omitted).  The plaintiff must also show that "there is a direct causal link between [the] municipal policy or custom and the alleged constitutional deprivation." Brown v. Muhlenberg Twp., 269 F.3d 205, 214 (3d Cir. 2001) (*quoting* City of Canton v. Harris, 489 U.S. 378, 385, 109 S. Ct. 1197, 103 L. Ed. 2d 412 (1989)).  It must be the policymaker's actions that "directly caused constitutional harm."  Gottlieb v. Laurel Highlands Sch. Dist., 272 F.3d 168, 175 (3d Cir. 2001).

Even if Plaintiff could show that Mr. Lewis' rights were violated as discussed above, in order for Plaintiff to sustain her Monell claim against PrimeCare, Plaintiff must additionally show that the violation was as a result of a municipal policy or practice. Monell v. Dep't of Soc. Servs., 436 U.S. 658, 691 (1978); Williams, 891 F.2d at 467.  In other words, in order to attribute liability to PrimeCare, Plaintiff must show:  (1) an underlying constitutional violation; (2) the identity of the officials or governmental bodies with final policymaking authority; and (3) proof that those individuals "have, through their

decisions, "caused the deprivation of rights at issue by policies which affirmatively command that it occur or by acquiescence in a long-standing practice or custom which constitutes the "standard operating procedure" of the local governmental entity."' Simmons v. City of Phila., 947 F.2d 1042, 1062 (3d Cir. 1991) (*quoting* Jett v. Dallas Indep. Sch. Dist., 491 U.S. 701 (1989)).   Plaintiff must establish that the policy in question was the "moving force" behind (i.e., the proximate cause of) the constitutional tort.   Monell, 436 U.S. at 691; Fagan v. City of Vineland, 22 F.3d 1283, 1292 (3d Cir. 1994).   Finally, Plaintiff must prove that the policymakers of PrimeCare acted with "deliberate indifference to the rights of persons with whom [correctional officers] came into contact" when they enacted the policy in question.   Simmons, 947 F.2d at 1060-61.

An "official policy" is one in which "a deliberate choice to follow a course of action is made. . . by the official or officials responsible for establishing final policy with respect to the subject matter in question."   Pembaur v. City of Cincinnati, 475 U.S. 469, 483-84 (1986). The inclusion of "custom" along with "policy" recognizes that the practices of government officials can, "although not authorized by written law[,] ...be so permanent and well settled as to constitute a 'custom or usage' with the force of law."   Monell, 436 U.S. at 691.   A plaintiff "must show that 'a reasonable municipal policymaker had knowledge of a pattern of prior incidents or knowledge of similar violations of constitutional rights and failed to take adequate measures to ensure the particular right in question."'   Cacciatore v. City of Phila., 2005 WL 2139876 at *2 (E.D. Pa. 2005) (Bartle, J.) (*quoting* Garcia v. County of Bucks, 155 F. Supp. 2d 259,268 (E.D. Pa. 2001)). Moreover, '"a single incident of unconstitutional activity is not sufficient to impose liability

under <u>Monell</u>. . . ."' <u>Groman v. Twp. of Manalapan</u>, 47 F.3d 628, 637 (3d Cir. 1995) (*quoting* <u>Okla. City v. Tuttle</u>, 471 U.S. 808, 823-24 (1985)).

The purpose of requiring that Plaintiff shows that there was a pattern of prior, similar instances is to prove that PrimeCare was on notice of a deficiency and failed to act.  In the present case, Plaintiff alleges a suicide involving Andrew Beers which was not under similar circumstances and there was not even allegations of reckless indifference against PrimeCare or any of its healthcare providers.

Similarly, the failure to properly train employees can create a custom or policy for purposes of § 1983 liability, if such failure is tantamount "to deliberate indifference to the rights of persons with whom the [employees] come into contact." <u>City of Canton v. Harris</u>, 489 U.S. 378, 388, 109 S. Ct. 1197, 103 L. Ed. 2d 412 (1989).

> Only where a municipality's failure to train its employees in relevant respect evidences a "deliberate indifference" to the rights of its inhabitants can such a shortcoming be properly thought of as a city "policy or custom" that is actionable under § 1983.... Only where a failure to train reflects a "deliberate" or "conscious" choice by a municipality - a "policy" as defined by our prior cases - can a city be liable for such a failure under § 1983.

<u>Id.</u>, at 389.  Therefore, "not all failures or lapses in training will support liability under § 1983." <u>Woloszyn</u>, 396 F.3d at 325.

Plaintiff's <u>Monell</u> claim - whether be under an alleged deficient custom theory or an alleged deficient training theory - fails for multiple reasons.  First, absent a constitutional violation in the first instance - of which there was none here – the

derivative issue of a deficient custom, practice or policy is irrelevant.  See, Collins v. City of Harker Heights, 503 U.S. 115, 123 (1992) (holding that a city may be liable for a policy or custom of failing to train its employees only "if a city employee violates another's constitutional rights."); City of L.A. v. Heller, 475 U.S. 796, 799 (1986) ("If a person has suffered no constitutional injury at the hands of the individual police officer, the fact that the departmental regulations might have authorized the use of constitutionally excessive force is quite beside the point."); Estate of Smith v. Marasco, 318 F.3d 497, 505 (3d Cir. 2003) ("[T]he initial question in a section 1983 action is 'whether the plaintiff has alleged a deprivation of a constitutional right at all.'").

Plaintiff asserts that the medical staff was inadequately trained.  To establish the requisite "deliberate indifference" for a failure to train case, there must be proof of "a pattern of underlying constitutional violations."  Carswell v. Borough of Homestead, 381 F.3d 235, 234 (3d Cir. 2004), cert. denied, 126 S. Ct. 236 (2005).

> [A] failure to train, discipline or control can only form the basis for section 1983 municipal liability if the plaintiff can show both contemporaneous knowledge of the offending incident or knowledge of a **prior pattern** of **similar incidents and circumstances** under which the supervisor's actions or inaction could be found to have communicated a message of approval to the offending subordinate.

Montgomery v. De Simone, 159 F.3d 120, 127 (3d Cir. 1998) (emphasis added).  As noted above, there were no allegations that there had been a series of prior, similar incidents.

Therefore, it is respectfully requested that this Honorable Court grant the Motion to Dismiss and that the PrimeCare Medical Defendants be dismissed from this case with prejudice.

Respectfully submitted,

JOHNSON, DUFFIE, STEWART & WEIDNER

By:    s/John R. Ninosky

John R. Ninosky, Esquire
Attorney I.D. No. 78000
301 Market Street ~ P.O. Box 109
Lemoyne, PA  17043-0109
Telephone (717) 761-4540
Email:  jrn@jdsw.com

Date:  July 12, 2016           Attorney for PrimeCare Medical Defendants
795698

## CERTIFICATE OF SERVICE

I hereby certify on the 12th day of July, 2016, that the foregoing *Brief in Support of Motion to Dismiss Plaintiff's Amended Complaint* was electronically filed with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following:

Amy R. Boring, Esquire
Michael Zicolello, Esquire
Schemery Zicolello
333 Market Street
Williamsport, PA  17701
amy@sz-law.com
Mike@sz-law.com
*Attorney for Plaintiff*

Timothy A. Bowers, Esquire
Tim Bowers Law Office
20 North Front Street
P.O. Box 88
Sunbury, PA  17801
timbowers@timbowerslaw.com
*Attorney for Plaintiff*

Sean P. McDonough, Esquire
Dougherty, Leventhal & Price, LLP
75 Glenmaura National Blvd.
Moosic, PA  18507
smcdonough@dlplaw.com
*Attorney for Northumberland County Defendants*

JOHNSON, DUFFIE, STEWART & WEIDNER

By:     s/John R. Ninosky
        John R. Ninosky