## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| HOPE LEWIS, individually and on behalf of the estate of CYRUS LEWIS, deceased, | CIVIL ACTION NO. 4:14-CV-02126 |
| Plaintiff, | (MEHALCHICK, M.J.) |
| v. | |
| COUNTY OF NORTHUMBERLAND, et al., | |
| Defendants. | |

## <u>MEMORANDUM OPINION</u>

Before the Court is a motion to dismiss filed July 12, 2016, by Defendants PrimeCare Medical, Inc. ("PrimeCare"), and three PrimeCare employees: Dr. Thomas Weber, Mikelanne Welliver, and Caitlin Henrie (Collectively, the "PrimeCare Defendants"). (Doc. 31). The Defendants' motion to dismiss states that Plaintiff's amended complaint (Doc. 25) does not adequately present facts supporting the contention that the PrimeCare Defendants acted with reckless indifference to the risk of suicide exhibited by pretrial detainee Cyrus Lewis.

I.   <u>Background and Procedural History</u>

Hope Lewis ("Plaintiff"), mother of Cyrus Lewis ("Lewis") and administratrix for his estate, brought a wrongful death action against the Defendants[1] on November 5, 2014. (Doc. 1).

_____

[1] Six Defendants named in the initial complaint are not parties to the present motion to dismiss. These parties are the County of Northumberland, the Northumberland County Board of Prison Inspectors, Warden Roy Johnson, Commander Brian Wheary, Sergeant Jason Greek, and "Jen," a corrections officer at the prison whose last name was not identified. "Jen" was replaced by Defendant Jennifer Lashomb upon Plaintiff's filing of an amended complaint.

In her initial complaint, Plaintiff asserted that the actions taken by the PrimeCare Defendants, prison officials, and corrections officers caused Lewis to commit suicide in his cell on June 15, 2014; five days after Lewis was committed to the prison to await trial. (Doc. 1, at 4-8). On June 15, 2016, Plaintiff amended her complaint to include a survival action and a Fourteenth Amendment claim against the PrimeCare Defendants pursuant to 42 U.S.C. § 1983. (Doc. 25). The PrimeCare Defendants filed the instant motion to dismiss and brief in support on July 12, 2016, arguing that Plaintiff cannot show the PrimeCare Defendants caused any Constitutional violation of Lewis' rights, and that Plaintiff's claims seek *Monell*[2] liability where no policy was in place that would permit recovery on such a theory. (Doc. 31; Doc. 32). Plaintiff filed a brief in opposition on July 26, 2016, reiterating the facts and arguments presented in her amended complaint. (Doc. 33).

## II.   MOTION TO DISMISS STANDARD

Rule 12(b)(6) provides that a complaint should be dismissed for "failure to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6). The United States Court of Appeals for the Third Circuit, discussing the evolving standards governing pleading practice in federal court, has stated in relevant part:

> Standards of pleading have been in the forefront of jurisprudence in recent years. Beginning with the Supreme Court's opinion in *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007), continuing with our opinion in *Phillips* [*v. Cnty. of Allegheny*, 515 F.3d 224 (3d Cir. 2008)]and culminating recently with the Supreme Court's decision in *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 1955, 173 L. Ed. 2d 868 (2009), pleading standards have seemingly

---

[2] 436 U.S. 658 (1978) – A municipality and officials may be liable for harms suffered due to Constitutional violations committed pursuant to municipal policy or custom.

shifted from simple notice pleading to a more heightened form of pleading, requiring a plaintiff to plead more than the possibility of relief to survive a motion to dismiss.

*Fowler v. UPMC Shadyside*, 578 F.3d 203, 209-10 (3d Cir. 2009).

In considering whether a complaint fails to state a claim upon which relief may be granted, the court must accept as true all allegations in the complaint and all reasonable inferences that can be drawn therefrom are to be construed in the light most favorable to the plaintiff. *Jordan v. Fox, Rothschild, O'Brien & Frankel*, 20 F.3d 1250, 1261 (3d Cir. 1994). However, a court "need not credit a complaint's 'bald assertions' or 'legal conclusions' when deciding a motion to dismiss." *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997). A court need not assume that a plaintiff can prove facts that the plaintiff has not alleged. *Assoc'd Gen. Contractors of Cal. v. Cal. State Council of Carpenters*, 459 U.S. 519, 526 (1983). A plaintiff must provide some factual grounds for relief, which "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555. In *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), The Supreme Court of the United States held that, when considering a motion to dismiss, a court should "begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Iqbal*, 556 U.S. at 679. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. In deciding a Rule 12(b)(6) motion, the Court may consider the facts alleged on the face of the complaint, as well as "documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007).

III.   **FACTS AS ALLEGED IN PLAINTIFF'S AMENDED COMPLAINT (DOC. 25)**

On June 10, 2014, Cyrus Lewis was committed to the Northumberland County Prison "in lieu of $30,000 combined bail on various charges." (Doc. 25, ¶ 12). Lewis was going through withdrawal from narcotics, a fact known to the Prison and its staff. (Doc. 25, ¶ 13-14). Lewis was not given a mental health and suicide risk evaluation upon his commitment. (Doc. 25, ¶ 67). In the days following his commitment, Lewis expressed suicidal thoughts to staff and inmates, who in turn relayed Lewis' threats to prison staff. (Doc. 25, ¶ 16-17). No protections were put in place despite Lewis' suicidal expressions. (Doc. 25, ¶ 68-69).

The Prison has specific procedures for suicidal inmates, including "constant video surveillance, 15 minute checks by NCP staff, 30 [minute] checks by NCP staff, and provision of security smocks and security blankets rather than normal, institutional clothing, bedding and mattresses and placement in a suicide cell." (Doc. 25, ¶ 18). NCP staff did not follow this protocol. (Doc. 25, ¶ 19-24). Instead, Lewis was placed in a normal cell with standard amenities. (Doc. 25, ¶ 24-25).

On June 15, 2014, Lewis placed a blanket over the window to his cell, blocking the view to the interior. (Doc. 25, ¶ 26). Roughly an hour later, corrections officers asked another inmate to check on Lewis, at which time it was discovered that Lewis had hanged himself using the bedsheet provided by the prison. (Doc. 25, ¶ 30-31). He was pronounced dead upon arrival at the hospital. (Doc. 25, ¶ 41). Plaintiff asserts that there was evident confusion and hesitation on the part of corrections officers, belying any training in response to suicides by inmates. (Doc. 25, ¶ 33, ¶ 36, ¶ 40).

IV.   **RECKLESS INDIFFERENCE BY PRIMECARE DEFENDANTS**

The PrimeCare Defendants argue that the facts, as alleged, do not show any Constitutional violation in which they were involved. Plaintiff submits that the Amended Complaint adequately alleges facts supporting cognizable Fourteenth Amendment claims for deliberate indifference with regard to the suicide of Cyrus Lewis while under Defendants' care, and has sufficiently identified the individual PrimeCare defendants who as actors, or non-actors, in this case.

"To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins,* 487 U.S. 42, 48 (1988). "[I]t is established in this Circuit that the suicide of a pretrial detainee can support a recovery in a 42 U.S.C. § 1983 action" as a Constitutional violation if three factors are met. *Colburn v. Upper Darby Twp.*, 946 F.2d 1017, 1023 (1991). "[A] plaintiff in a prison suicide case has the burden of establishing three elements: (1) the detainee had a 'particular vulnerability to suicide,' (2) the custodial officer or officers knew or should have known of that vulnerability, and (3) those officers 'acted with reckless indifference' to the detainee's particular vulnerability." *Colburn*, 946 F.2d at 1023.

"Under the first prong, the plaintiff must show that there was a 'strong likelihood, rather than a mere possibility, that self-inflicted harm will occur.'" *Estate of Thomas v. Fayette Cnty.*, 2016 WL 3639887, at *12 (W.D. Pa. July 8, 2016) (quoting *Colburn*, 946 F.2d at 1024). "[T]he 'vulnerability to suicide' examination 'requires that the evidence establish that the particular individual, not members of a demographic class to which the individual belongs, exhibits a particular vulnerability to suicide.'" *Estate of Thomas*, 2016 WL 3639887, at *13 (quoting *Wargo*

*v. Schuylkill Cnty.*, 2008 WL 492471, at *6 (M.D. Pa. Nov. 14, 2008)). In conjunction with proof of a strong likelihood of self-inflicted harm, a plaintiff must show that the defendants were "aware of facts from which the inference could be drawn that a substantial risk of serious harm existed, and that [they] drew the inference." *Tatsch-Corbin v. Feathers*, 561 F.Supp.2d 538, 544 (W.D. Pa. 2008) (quoting *Natale v. Camden Cnty. Corr. Facility*, 318 F.2d 575, 582 (3d Cir. 2003)). "A factfinder may determine the actor's knowledge through 'circumstantial evidence' or 'may conclude that [an actor] knew of a substantial risk from the very fact that the risk was obvious.'" *Tatsch-Corbin*, 561 F.Supp.2d at 544 (quoting *Farmer v. Brennan*, 511 U.S. 825, 842 (1994)). "Liability may not be imposed unless 'there is something more culpable on the part of the officials than a negligent failure to recognize the high risk of suicide.' Instead, the 'strong likelihood of suicide must be so obvious that a lay person would easily recognize the necessity for preventative action.'" *Estate of Thomas*, 2016 WL 3639887, at *14 (quoting *Colburn*, 946 F.2d at 1023) (internal citations omitted).

The Court finds that Plaintiff's Amended Complaint provides sufficient allegations to show Lewis was particularly vulnerable to suicide, and that he expressed suicidal ideations. The Amended Complaint also alleges that despite this, PrimeCare Defendants failed to give Lewis a full mental health and suicide risk evaluation. The Court finds these allegations are sufficient to plead a "particular vulnerability to suicide" and are sufficient to defeat a motion to dismiss.

Additionally, Plaintiff alleges that prison staff noted Lewis' suicide risk on his intake form, were informed by other inmates Lewis threatened to commit suicide, and heard Lewis himself express the same. (Doc. 25, ¶ 17). These facts, taken as true, allege clear knowledge on the part of prison staff as to Lewis' suicide risk, and at the very least establish factual scenarios

where prison staff "should have been aware." Ignoring these facts would plausibly extend beyond a "negligent failure to recognize the high risk of suicide."

"[W]hen the factual scenario presented by a plaintiff suggests that [the defendant] should have known that a prisoner was a suicide risk, and failed to take necessary and available precautions to protect the prisoner from self-inflicted wounds, the complaint will survive dismissal." *Freedman v. City of Allentown*, 853 F.2d 1111, 1115 (3d Cir. 1988). Plaintiff contends that the Defendants had available procedures for dealing with inmates exhibiting high risks of suicide. (Doc. 25, ¶ 18). Plaintiff's amended complaint outlines a factual scenario where these available procedures were not followed, leading directly to the death of Cyrus Lewis. (Doc. 25, ¶ 19-31). Plaintiffs' Amended Complaint goes beyond questioning the provision of specific treatment and raises the possibility that prison officials knew that Lewis suffered from a suicidal ideations and did not attempt to provide appropriate, necessary care in a timely manner. *See Ponzini v. Monroe Cty.*, 897 F. Supp. 2d 282, 289 (M.D. Pa. 2012). At this preliminary stage, it would be inappropriate for the Court to make any findings of fact or to cast doubt upon any allegations as set forth in Plaintiff's Amended Complaint. If all facts alleged in the Amended Complaint are construed in Plaintiff's favor, Plaintiff has established a cognizable claim under the Fourteenth Amendment.

As Plaintiff has sufficiently alleged facts showing knowledge of a suicide risk, failure on the part of the Defendants to take necessary and available precautionary measures, and that these failures lead to the death of Cyrus Lewis, the Court finds that dismissal at this stage would be inappropriate, and will deny PrimeCare Defendants motion to dismiss.

V.   *Monell* Liability

Defendants also move to dismiss Plaintiff's *Monell* claim, on the grounds that Plaintiff cannot show a constitutional violation resulting from a municipal policy or practice because there are no allegations of prior similar incidents. Plaintiff submits that the Amended Complaint sufficiently identifies similar incidents in a pattern of other suicides at Northumberland County Prison, or alternatively, that the Amended Complaint has plead facts to support a single-violation theory.

There are three situations where acts of a government employee may be deemed to be the result of a policy or custom of the governmental entity for whom the employee works, thereby rendering the entity liable under § 1983. *Ponzini v. Monroe Cty.*, 897 F. Supp. 2d 282, 291 (M.D. Pa. 2012); citing *Natale v. Camden County Correctional Facility*, 318 F.3d 575, 584 (3d Cir.2003). In *Natale*, the Third Circuit held:

> The first is where "the appropriate officer or entity promulgates a generally applicable statement of policy and the subsequent act complained of is simply an implementation of that policy." The second occurs where "no rule has been announced as policy but federal law has been violated by an act of the policymaker itself." Finally, a policy or custom may also exist where "the policymaker has failed to act affirmatively at all, [though] the need to take some action to control the agents of the government 'is so obvious, and the inadequacy of existing practice so likely to result in the violation of constitutional rights, that the policymaker can reasonably be said to have been deliberately indifferent to the need.' "

> *Natale*, 318 F.3d at 584 (internal citations omitted).

The Amended Complaint alleges that the PrimeCare defendants violated Lewis's constitutional rights as a result of certain policies, customs, and procedures promulgated by Northumberland County and PrimeCare Medical, Inc. Plaintiff states a cause of action and

provide a sufficient factual basis in support thereof. Specifically, the Amended Complaint alleges:

18. NCP has procedures for suicide watch including, but not limited to constant video surveillance, 15 minute checks by NCP staff, 30 minuet checks by NCP staff, and provision of security smocks and security blankets rather than normal, institutional clothing, bedding and mattresses and placement in a suicide cell.

…

44. Defendants have failed to properly train NCP staff in identifying and monitoring suicidal inmates.

45. Defendants have failed to properly supervise NCP staff in identifying and monitoring suicidal inmates.

46. Defendants have a custom, practice or procedure of ordering inmates, rather than staff, to perform checks on prisoners.

47. Defendants have a custom, practice or procedure of ignoring suicidal inmates and failing to place suicidal inmates on suicide watch.

48. Defendants were deliberately indifferent to the suicidal state and ideations of Cyrus Lewis.

49. Defendants' deliberate indifference to the right of inmates led to the suicide death of inmate Andrew Beers in August 2013.

50. Despite the death of Andrew Beers, defendants have failed and refused to enact and follow sufficient procedures and policies to protect the lives of inmates.

It is necessary that this issue proceed to discovery because evidence concerning the existence of any improper policies, customs, or procedures will be addressed in the discovery process, and the presence of a dispute of material fact as to such policies or procedures may be determined through a future motion for summary judgment. At the motion to dismiss stage, Plaintiff needs only to state a cause of action in accordance with the standards set forth in *Iqbal* and *Twombly*, and Plaintiff has exceeded this threshold. Accordingly, PrimeCare Defendants' motion to dismiss on these grounds will be denied.

9

VI.   **CONCLUSION**

For the reasons set forth in this Memorandum Opinion, PrimeCare Defendants' Motion to Dismiss (Doc. 31) shall be **DENIED**.

An appropriate Order shall follow.


Dated: December 15, 2016                    *s/ Karoline Mehalchick*
                                            **KAROLINE MEHALCHICK**
                                            **United States Magistrate Judge**

10